IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____ )
LOCAL 589, AMALGAMATED TRANSIT            )
UNION, PATRICK F. HOGAN, TIMOTHY          )
C. BROWN, HERIBERTO CORA,                 )
ANDREW HUNTER, DAVID JORDAN,              )
STEVEN MAHER, DENNIS PERRY,               )     Civil Action No.
ALLEN R. LEE, TRACEY SPENCER,             )
JEFFREY WILLIAMS, and all others          )     1:13-CV-11455-DPW
similarly situated,                       )
                                          )
            Plaintiffs,                   )
                                          )
            v.                            )
                                          )
MASSACHUSETTS BAY                         )
TRANSPORTATION AUTHORITY                  )
                                          )
            Defendant.                    )
_____ )

---

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Mark W. Batten
Laura E. Deck
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
*Attorneys For Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

LEGAL ARGUMENT ........................................................................................................ 2

   I.   **Plaintiffs' "Start-End" Travel Time Is Not Compensable Under Federal or State Law** ....................................................................................................................... 2

         a. The Statute Expressly Declares That Time Spent Traveling Home After Ceasing Principal Activities Is Not Compensable. ............................................. 3

         b. Case Law Overwhelmingly Holds That Where There Is No Evidence That Plaintiffs Engage In Principal Activities During Or After A Commute, Start-End Time Is Ordinary, Non-Compensable Commuting Time. ........................................ 4

         c. The Single, Unpublished Contrary Decision Is Distinguishable and Should Not Be Followed. .......................................................................................................... 7

         d. The Facts Regarding Specific Plaintiffs Aptly Illustrate Why It Would Be Unreasonable to Hold Start-End Time Compensable. .......................................... 10

             *i. Tracey Spencer* ....................................................................................... 11

             *ii. Allen Lee* .................................................................................................. 11

   II.   **Any And All Unpaid Mid-day Travel Takes Place During Bona Fide Meal Breaks** ......................................................................................................... 13

   III. **Alternatively, Any And All Unpaid Mid-day Travel Takes Place At The End And Beginning Of Two Separate Workdays** ....................................................... 15

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andrews v. Dubois,*
    888 F. Supp. 213 (D. Mass. 1995) ...........................................................................7

*Babcock v. Butler Cnty.,*
    No. 12-cv-394, 2014 WL 688122 (W.D. Pa. Feb. 21, 2014)....................................14

*Baker v. GTE North, Inc.,*
    110 F.3d 28 (7th Cir. 1997) ................................................................................5, 6

*Botero v. Commonwealth Limousine Service, Inc.,*
    No. 12-104-10428-NMG, 2014 WL 1248158 (D. Mass. Mar. 25, 2014) ........................13, 14

*Castenada v. JBS USA,*
    LLC, No. 08-cv-01833-RPM, 2014 WL 1796707 (D. Colo. May 6, 2014) ...........................14

*Chambers v. Sears Roebuck & Co.,*
    428 F. App'x 400 (5th Cir. 2011) ...........................................................................7

*Dooley v. Liberty Mut. Ins. Co.,*
    307 F. Supp. 2d 234 (D. Mass. 2004) ....................................................................7

*Gilmer v. Alameda-Contra Costa Transit District,*
    No. C 08-05186 CW, 2010 WL 289299 (N.D. Cal. Jan. 15, 2010)..................................7, 8, 9

*Griffin v. S & B Engineers & Constructors, Ltd.,*
    507 F. App'x 377 (5th Cir. 2013) ........................................................................6, 9

*IBP, Inc. v. Alvarez,*
    546 U.S. 21 (2005)...........................................................................................10

*Johnson v. RGIS Inventory Specialists,*
    554 F. Supp. 2d 693 (E.D. Tex. 2007) ...................................................................6

*Kavanagh v. Grand Union Co.,*
    192 F.3d 269 (2d Cir. 1999)..............................................................................4, 6

*Kuebel v. Black & Decker Inc.,*
    643 F.3d 352 (2d Cir. 2011)...............................................................................6

*Martin v. City of Richmond,*
    504 F. Supp. 2d 766 (N.D. Cal. 2007) .................................................................10

*Mitchell v. JCG Industries, Inc.,*
    745 F.3d 837 (7th Cir. 2014) .............................................................13, 14, 15, 16

*Mullally v. Waste Mgmt. of Mass.*,
452 Mass. 526 (2008) ................................................................................................2

*Roy v. Cnty. of Lexington, South Carolina*,
141 F.3d 533 (4th Cir. 1998) ...................................................................................13

*Rutti v. LoJack Corp.*,
596 F.3d 1046 (9th Cir. 2010) ...............................................................................6, 8

*Sepulveda v. Allen Family Foods, Inc.*,
591 F.3d 209 (4th Cir. 2009) ..................................................................................13

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
321 U.S. 590 (1944)...................................................................................................9

*United Transp. Union Local 1745 v. City of Albuquerque*,
178 F.3d 1109 (10th Cir. 1999) .......................................................................5, 7, 12

*Vega v. Gasper*,
36 F.3d 417 (5th Cir. 1994) .......................................................................................6

*Walling v. Mid-Continent Pipe Line Co.*,
143 F.2d 308 (10th Cir. 1944) ...................................................................................5

## STATUTES

The Fair Labor Standards Act ............................................................................... passim

Portal to Portal Act of 1947 ................................................................................. passim

## OTHER AUTHORITIES

U.S. Department of Labor, "Fact Sheet #22: Hours Worked Under the Fair Labor
Standards Act (FLSA)" (July 2008) ..........................................................................3

## INTRODUCTION

Plaintiffs in this case – ten MBTA operators and the union that represents them – contend that they are owed payment for time spent traveling (1) at the end of the day to return to the day's starting point and (2) during unpaid breaks in between shifts to reach the start location of the second shift.  Plaintiffs call the former travel "start-end time," meaning the time it takes to travel from the termination point of the last route of the day back to the work location where they initially reported – whether they actually made that trip or not.  Plaintiffs must concede that the MBTA does not require such travel.  Upon finishing their final route of the day, Plaintiffs are free to go wherever and to do whatever they wish, whether they choose to go out with friends, run personal errands, travel directly home, or anything else.  Discovery now confirms that Plaintiffs engage in no work activities after they finish their last route of the day.  The "start-end" claim thus fails as a matter of law.  After an employee ceases his or her principal work activities on a workday, his or her activities are no longer compensable.  The time the employee may spend traveling from his or her final work location of the day to his or her personal vehicle – or to whatever other destination the employee chooses – simply is not compensable time, and it simply makes no difference under the law that the morning commute may take more or less time than the evening commute.

In the latter claim, concerning mid-day travel, Plaintiffs contend that they were wrongfully denied compensation for time spent traveling from one work location to another between shifts.  This type of travel is not often needed, often is compensated, and on the occasions it occurred and was unpaid, it occurred during bona fide meal breaks and therefore did not constitute compensable worktime under the FLSA.  In any event, on the facts of this case, all of this travel occurred between two separate "workdays," as that term is defined in the FLSA,

rendering any such travel indistinguishable from ordinary commuting time.  Accordingly, the MBTA respectfully requests that this Court grant its Motion for Partial Summary Judgment on Plaintiffs' claims for start-end time and Plaintiffs' FLSA claims for time spent traveling during unpaid breaks between shifts.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendants rely upon and incorporate by reference the relevant facts and procedural history set forth in the accompanying Statement Of Undisputed Material Facts Pursuant To Local Civil Rule 56.1.

## LEGAL ARGUMENT

**I.      Plaintiffs' "Start-End" Travel Time Is Not Compensable Under Federal or State Law.**

Plaintiffs allege that the Authority violated state and federal wage laws[1] when it failed to compensate them for the time that would be required to travel from the point where they end their last route of the day to the point where they started their day.  They seek such compensation, in fact, whenever an operator's day ends in a different place than it began, whether the individual actually travels back to the start point or not.

As the MBTA has consistently maintained, it does not require such travel, nor do Plaintiffs have any job duties after finishing their last route of the day.  (*See* Declaration of Peter Brekalis, signed June 13, 2014 ("PB Decl."), ¶ 9; Declaration of William McClellan, signed June 12, 2014 ("WM Decl."), ¶ 10; Declaration of Leslie Garcia, signed June 12, 2014 (LG Decl.), ¶ 9.)  Indeed, even after completing discovery, Plaintiffs can offer no evidence that they engage in *any* work-related activity, much less activities that are integral and indispensable to their

---

[1] The Massachusetts Minimum Wage Law, M.G.L. c. 151, § 1A, "was intended to be essentially identical to the Fair Labor Standards Act."  *Mullally v. Waste Mgmt. of Mass.*, 452 Mass. 526, 631 (2008) (citations and internal quotations omitted).

principal activities, after their last route of the day.  Regardless of where the day ends, the Plaintiffs may travel home, or anywhere else, directly from the day's end point.  (*Id*.)  The Authority does not compensate employees for time spent traveling from the day's end point to the day's starting point, nor is it under any legal or contractual obligation to do so.

      a.   The Statute Expressly Declares That Time Spent Traveling Home After Ceasing Principal Activities Is Not Compensable.

Generally, under the Fair Labor Standards Act, employers must pay employees a minimum wage for the time that it "employ[s]" them, up to forty hours per week and overtime for hours worked in excess of forty hours.  29 U.S.C. §§ 206, 207.  The Portal to Portal Act specifically provides, however, that an employer need not compensate employees for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," nor for time spent in "activities which are preliminary or postliminary to said principal activity or activities," so long as the travel time "occur[s] either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).  Indeed, the Department of Labor issued regulations explicitly stating that "ordinary home to work travel" is *not* compensable work time, regardless of whether an employee "works at a fixed location or at different job sites."  29 C.F.R. § 785.35.[2]

Under the plain language of the FLSA and accompanying regulations (and therefore under Massachusetts law as well), an ordinary, non-compensable commute at day's end does not become compensable merely because it is longer or shorter than the commute at the beginning of

---

[2] *See also* U.S. Department of Labor, "Fact Sheet #22: Hours Worked Under the Fair Labor Standards Act (FLSA)" (July 2008) ("An employee who . . . returns to his/her home at the end of the workday is engaged in ordinary home to work travel, which is not work time."); 29 C.F.R. §790.7(c) (non-compensable time includes "an employee's ordinary daily trips between his home or lodging and the actual place where he does what he is employed to do").

the day, nor merely because it commences at a different location.  The statute does not regulate the length or location of the commute; the question is merely whether the time in question comes before or after the end of the employee's "principal activities."  29 U.S.C. § 254(a).

Here, the undisputed evidence demonstrates that Plaintiffs do not engage in any principal activity – or, for that matter, any activity at all on behalf of their employer – after they finish their last route of the day.  The MBTA has presented evidence that such work is not required, (PB Decl., ¶ 9; WM Decl., ¶ 10; LG Decl., ¶ 9), and Plaintiffs have no evidence to dispute the matter.

> **b.** Case Law Overwhelmingly Holds That Where There Is No Evidence That Plaintiffs Engage In Principal Activities During Or After A Commute, Start-End Time Is Ordinary, Non-Compensable Commuting Time.

Federal courts around the country have confirmed the plain language of the statute and have consistently held that travel incurred prior to commencing or subsequent to ceasing principal activities is non-compensable even if commuting time varies day-to-day.  As the Second Circuit explained in *Kavanagh v. Grand Union Co*., 192 F.3d 269, 272 (2d Cir. 1999):

> This term ["normal travel" in 29 C.F.R. §785.35] does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute.  Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship.

In *Kavanagh*, the plaintiff drove to various cities in New York State to provide mechanical services on behalf of his employer at customers' locations.  The court held that "the regulations . . . do not permit a construction that would require Grand Union to compensate Kavanagh for his time spent traveling to the first job of the day and from the last job of the day, regardless of the length of that distance or the benefit to Grand Union of having only one employee cover such a large geographic area."  *Id*. at 273.

*Kavanaugh* did not break new ground; the decision built on precedent following the same rationale.[3]   The Seventh Circuit rejected a similar claim in *Baker v. GTE North, Inc.*, 110 F.3d 28, 29-31 (7th Cir. 1997).   There the plaintiff electricians had a choice of driving an employer vehicle from their homes to various worksites and home again, or picking up the employer vehicle at a central location each day, taking it out to worksites, and dropping the vehicle off at the central location at the end of the day.  *Id*. at 29.   Employees' compensable time started upon arrival at the first worksite.   *Id*.   The Seventh Circuit held that plaintiffs were not entitled to compensation for time spent commuting to and from worksites at the start and end of the day, regardless of whether, at the end of the day, a given employee drove an employer vehicle all the way home or stopped at the central location to pick up his own car.  *Id*. at 30-31.   The mere fact that some employees chose, "for reasons of personal convenience," to drop off the employer vehicle at the central location did not transform the time spent commuting from the worksite to the central location into something other than non-compensable commuting time.  *Id*. at 31.   "An employee who leaves the company car in a parking lot a block away from his house and walks the rest of the way does not become entitled to compensation for driving time, while the employee who pulls into the driveway goes unpaid."  *Id*.   *See also United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999) (holding city bus drivers' travel time to and from first and last shift of the day was "classic commuting-to-work time" excluded under the Portal to Portal Act; "the fact that a driver may end his workday at a relief

---

[3] The line of cases holding that such differential travel time is not compensable even reaches back before the 1947 passage of the Portal-to-Portal Act.  In *Walling v. Mid-Continent Pipe Line Co*., 143 F.2d 308, 310 (10th Cir. 1944), the plaintiffs reported for work at a warehouse, and were then transported "over dirt roads, fields, and pastures" to the actual work site along a pipeline, which could be as much as 75 miles away from the place of initial report. Workers were compensated for the travel from the warehouse to the work site, but not for any time after the workday ended at the work site, because they were free to return on the company truck "or by any other means they chose." *Id*. "[S]ince the day's work ended at the place of performance," the court held, "they were not entitled to have the return time included in the workday or to be compensated therefor." *Id*. at 311.

5

point, where his own vehicle is unavailable, does not transform what otherwise would be a simple work-to-home commute into compensable hours worked."); *Vega v. Gasper*, 36 F.3d 417, 424-25 (5th Cir. 1994) (holding farm workers who chose to ride employer's buses to and from fields, but were not required to do so, were engaged in non-compensable commuting time); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007) (following *Vega*).

Later authority continues to hold that transportation to and from a work location at the beginning and end of the day is not compensable time, even where the job ends in a different place than it began. In *Rutti v. LoJack Corp.*, 596 F.3d 1046 (9th Cir. 2010), for example, the plaintiff traveled around Orange County, California, installing and repairing LoJack's theft protection systems in customers' cars. He was paid beginning when he arrived at the first customer's location and ending when he finished at the last customer's location of the day. *Id.* at 1049. The court held that the travel time (even though in an employer-owned vehicle, and even though Rutti performed some incidental work before and during his commute) was not compensable. *Id.* at 1051-54. *See also Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) (time spent commuting to and from varying work locations at the start and end of the day was not compensable, even where employee completed certain administrative tasks at home in the morning before departing);[4] *Griffin v. S & B Eng'rs & Constructors, Ltd.*, 507 F. App'x 377, 383-84 (5th Cir. 2013) (mandatory bus travel from parking lot to plant, during which employees were subject to employer's rules of conduct, was non-compensable commuting time); *Chambers*

---

[4] The court's primary focus in *Kuebel* was on whether activities the plaintiff engaged in at home after work – sending data to his employer, checking email, and the like – rendered his commute time compensable. 643 F.3d at 360-61. But like the plaintiffs in *Rutti, Kavanagh*, and *Baker*, Kuebel's work day often started at one customer's location and finished at another, and if that had alone been sufficient to render travel time compensable, as Plaintiffs here allege, there would have been no need to examine the effect of the at-home activities. "[N]or was Kuebel prevented from leaving his last store of the day and going straight to a restaurant for dinner . . . those drives . . . [were] not part of his continuous workday and [were], in the end, 'ordinary home to work travel' outside the coverage of the FLSA").

*v. Sears Roebuck & Co*., 428 F. App'x 400, 410 (5th Cir. 2011) (home-work commute time not compensable where the travel is a normal incident of employment, even if some days' commute exceeds an employee's typical commuting time).

While the First Circuit has not addressed the issue of start-end time, district court decisions hint that the First Circuit would follow the majority approach described above.  For example, this Court (Keeton, J.) considered whether driving was a "principal activity" that would be compensable where employees were required to transport certain equipment from home to their worksites and back again.  *Dooley v. Liberty Mut. Ins. Co*., 307 F. Supp. 2d 234, 247 (D. Mass. 2004).  After a detailed examination of the relevant statutory language and case law, the *Dooley* court concluded that commuting was not itself a principal activity, and therefore if the employees had not commenced their principal activities at home prior to their morning commute, or if they did not continue their principal activities at home following their evening commute, then their commute was not compensable.  *Id*.  *See also Andrews v. Dubois*, 888 F. Supp. 213, 218 (D. Mass. 1995) (requirement that correctional officers transport dogs from home to work and back again did not render commuting time compensable).  These authorities thus agree that time spent commuting before an employee commences principal activities and after an employee ceases principal activities on a particular workday is not compensable.

> c.  The Single, Unpublished Contrary Decision Is Distinguishable and Should Not Be Followed.

In an unpublished decision, the U.S. District Court for the Northern District of California disagreed with *City of Albuquerque* and other precedent to conclude that start-end time was compensable because it was not "voluntary."  *Gilmer v. Alameda-Contra Costa Transit District*, No. C 08-05186 CW, 2010 WL 289299 at *6-7 (N.D. Cal. Jan. 15, 2010).  The *Gilmer* court concluded that the time plaintiff bus drivers spent traveling from the end-point of their last bus

route of the day to the location where they started their day was distinguishable from ordinary commuting time because, "absent fortuitous circumstances, the employees must spend time returning to their starting point before beginning their commute home." *Id*. at *6.

At the outset, it is worth noting that *Gilmer* is distinguishable because the Plaintiffs here personally selected each and every route that they operated; thus it can hardly be said that their start-end time was involuntary. Employees may consider whether a run starts and ends in the same location when they select their runs, or they may consider an infinite variety of other factors. For example, Plaintiff Cora has stated that he selects routes that allow him to be "home as early as possible" in order to see his young family. (*See* Declaration of Laura E. Deck, dated June 16, 2014 ("Deck Decl."), Ex. B at 5, Heriberto Cora's Response to Defendants' Interrogatory No. 8(h).) Similarly, Plaintiff Hogan stated that he would "pick the best runs available to [him] with the earliest off times." (*See* Deck Decl., Ex. B at 8, Patrick Hogan's Response to Defendants' Interrogatory No. 8(h).) Plaintiff Maher stated he "picked the most convenient work for" him. (*See* Deck Decl., Ex. B at 22, Stephen Maher's Response to Defendants' Interrogatory No. 8(h).) Plaintiff Williams picks "for off times and routes [he doesn't] mind driving." (*See* Deck Decl., Ex. B at 31, Jeffrey Williams' Response to Defendants' Interrogatory No. 8(h).)

In any event, *Gilmer* stands against every other decision on this subject in holding that start-end time is compensable at all, as well as its assumption that "voluntariness" is a dispositive factor in the analysis. Since the district court's decision in *Gilmer*, the Ninth Circuit (in which the *Gilmer* court sits) has specifically rejected a claim that "because [plaintiff] is required to commute in the vehicle provided by [his employer], he did not voluntarily agree to the arrangement and therefore is entitled to compensation." *Rutti*, 596 F.3d at 1051. Although *Rutti*

primarily concerned voluntariness in the context of a requirement that an employee drive an employer's vehicle, if the rule of *Gilmer* were correct – that *any* involuntary imbalance in daily commuting time violates the FLSA – there would have been no need to conduct the detailed analysis of the employer-vehicle exception in which the court engaged.  *See id*. at 1051-53.

Similarly, the Fifth Circuit has held since *Gilmer* that "the voluntary use of transportation . . . was not dispositive in concluding the travel time was noncompensable."  *Griffin*, 507 Fed. App'x. at 383-84.  Even where construction laborers were *required* to drive or otherwise travel to a designated location, park their personal vehicles, take employer buses to the worksite, and adhere to employer's policies and standards of conduct during the bus ride, the court held the commuting time spent on the employer buses was not compensable.  *Id*. at 383.  The *Griffin* court's decision turned not on whether the ride was voluntary, but on whether the plaintiffs performed work or received work instructions during the bus ride and prior to commencing principal activities at the destination.  *Id*.  Despite the fact that plaintiffs were "marginally restrict[ed]" by the employer's rules during the bus ride, they were not engaging in "integral and indispensable activities," and therefore their commuting time was not compensable.  *Id*.

The analysis in *Gilmer* is further undermined by its reliance on *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  *Tennessee Coal* involved compensable travel within underground mines from one work area to another.   The danger, discomfort and physical exertion inherent in this specific type of travel was critical to the Court's decision that the travel time was compensable.  *Id*. at 596, 598 ("The exacting and dangerous conditions in the mine shafts stand as mute, unanswerable proof that the journey from and to the portal involves continuous physical and mental exertion as well as hazards to life and limb.").  No such danger, discomfort or effort is alleged here. Furthermore, *Tennessee Coal* was

superseded by the passage of the Portal to Portal Act of 1947. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005). "Since the passage of the Portal-to-Portal Act, it has been the task of the courts to determine whether tasks incident to employment are compensable as 'principal activities,' or instead, whether they are non-compensable as mere 'preliminary' or 'postliminary' activities." *Martin v. City of Richmond*, 504 F. Supp. 2d 766, 772 (N.D. Cal. 2007).

Accordingly, this Court should follow the nearly universal consensus of decisions that follow the express statutory language to hold that where plaintiffs do not engage in principal activities during or after their commute home, as they unquestionably do not here, start-end time is not compensable. [5]

    d. <u>The Facts Regarding Specific Plaintiffs Aptly Illustrate Why It Would Be Unreasonable to Hold Start-End Time Compensable.</u>

MBTA operating employees have complete flexibility with regard to their commutes. Even if scheduled to end their day in a location other than where they started, many operators are able to drive directly home from their point of finishing by moving their cars to their final destination during a mid-day break or by having other operators drive their cars out to their finishing point. (PB Decl., ¶¶ 13-14; Deck Decl. Ex. B at 32, Jeffrey Williams' Response to Defendants' Interrogatory No. 11.) Still others choose to park in the same location each day, regardless of where their day starts or ends, and carpool, walk or take the MBTA services free of charge to their starting point and from their ending points. Plaintiffs Tracey Spencer and Allen Lee's schedules and commuting habits in particular illustrate that their commutes are no different

---

[5] Plaintiffs here do not appear to bring a claim for time spent traveling at the start of the day prior to commencing principal activities, but if they were to do so, such travel would be non-compensable for the same reasons traveling incurred after ceasing principal activities is non-compensable. Plaintiffs can point to no evidence that they engage in any work related activities prior to reporting to their first work location of the day.

than the thousands of other individuals who park at MBTA stations on the outskirts of the system and ride the system into the station closest to their job.

### i. Tracey Spencer

Spencer, like many other Orange Line operators, parks her car at Forest Hills at the start of each day and either starts her workday at Forest Hills or she rides the Orange Line to whatever station her selected schedule indicates that she should report to.  (LG Decl., ¶¶ 7-8.)  If her workday does not end at Forest Hills, but at another Orange Line station, after the end of her workday she rides the Orange Line back to Forest Hills where her personal vehicle is parked. (*Id*., ¶ 7.)  Since 2009, the majority of Spencer's 80 selected runs have started and ended in the same location.  (*Id*., ¶ 5.)  Forty of those runs started and ended at Forest Hills and 24 of them started and ended at Wellington.  (*Id*.)  Plaintiffs do not contend that Spencer's commute home at the end of the day would be compensable on those days.

Since 2009, Plaintiff Spencer selected 16 runs that assigned her to start her workday in one location and end it in another.  On every single one of those occasions, Spencer finished her day at Wellington station.  (*Id*., ¶ 6.)  Upon ending her day at Wellington, she was free to do whatever she wished, including to ride the Orange Line back to Forest Hills to pick up her personal vehicle and continue her commute home.  (*Id*., ¶ 9.)  Thus, her commute home was identical to the commute she had on the days her workday started and ended at Wellington.  To make a distinction based on where her workday started defies common sense.  And on no occasion was she required to perform any work after the end of her second segment. (*Id*.)

### ii. Allen Lee

Similarly, Plaintiff Allen Lee's scheduling and commuting choices reinforce that the distinction sought by plaintiffs – that commuting home at the end of the day may be

compensable depending on where the day started – is entirely meaningless.  Mr. Lee typically parks at Lechmere in East Cambridge when he is working on the Green Line.  (WM Decl., ¶ 5.) Like the other plaintiffs, Lee is relieved of all duties upon completion of his last route of the day. (*Id*., ¶ 10.)

Since the start of 2009, Lee has selected 77 runs.  (*Id*., ¶ 6.)  Nearly all of those runs – 67 of them – started and ended in same location.  (*Id*., ¶ 9.)  Forty-seven of those runs started and ended at Lechmere, 18 of them started and ended at Mattapan, and 2 started and ended at Cleveland Circle station.  (*Id*.)  Once again, Plaintiffs do not contend that their commutes home on this type of run would be compensable, even though Lee traveled back to Lechmere after work on 20 of those runs.

Only 10 of Lee's 77 runs since 2009 ended in a different location than where they started. (*Id*., ¶ 6.)  Eight of those 10 runs ended at Lechmere, where Lee parked his car each day.  (*Id*.) The remaining two runs ended at Boston College and Cleveland Circle, respectively.  (*Id*.)  On those days, unless he elected to go elsewhere before retrieving his personal vehicle, his commute was identical, or nearly so, to the two runs he selected at other times that started and ended in Cleveland Circle, which plainly do not entail compensable start-end travel time.

Plaintiffs can offer no meaningful justification to support their position that a commute from Cleveland Circle to Lechmere would be compensable one day and non-compensable on another day.  "While it may be more awkward or inconvenient to arrange for transportation to and from work where the employees, like the drivers here, may begin or end their work day at diverse locations, such awkwardness or inconvenience does not change an otherwise non-compensable commute into compensable work time."  *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1121 (10th Cir. 1999).  Such travel time is necessary to return

home at the end of the day, and even if it varies day-to-day, it is ordinary commuting time and is not compensable.  The MBTA is entitled to summary judgment.

## II.   Any And All Unpaid Mid-day Travel Takes Place During Bona Fide Meal Breaks.

The FLSA does not require employers to provide meal breaks, but if an employer chooses to do so, such breaks are not considered compensable worktime so long as they are "bona fide" meal breaks.  29 C.F.R. § 785.19(a).  A meal break is bona fide unless plaintiffs can show that they "'predominantly spen[d] the time performing activities for the employer's benefit.'"  *Botero v. Commonwealth Limousine Service, Inc.*, No. 12-104-10428-NMG, 2014 WL 1248158 at *3 (D. Mass. Mar. 25, 2014) (*quoting Harris v. City of Boston*, 253 F. Supp. 2d 136, 142-43 (D. Mass. 2003)).  *See also Roy v. Cnty. of Lexington, South Carolina*, 141 F.3d 533, 545 (4th Cir. 1998) ("[W]e believe the most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit.")

In assessing whether a meal break is bona fide, courts consider all surrounding circumstances, including (1) the limitations and restrictions placed on employees during the break, (2) the extent to which those restrictions benefit the employer, (3) the duties for which the employee is held responsible for during the break, (4) the frequency in which meal periods are interrupted or infringed upon, and (5) the agreement between the parties.  *Botero,* 2014 WL 1248158 at *4.

Limited restrictions or work related activities are generally not sufficient to render a meal break compensable.  *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 841 (7th Cir. 2014) ("[T]he exclusion of mealtime from worktime is not exclusion of just the time spent eating – it is the entire 'meal period' … including changing time"); *Sepulveda v. Allen Family Foods, Inc.*, 591

F.3d 209, 216, n.4 (4th Cir. 2009) (time spent during lunch breaks "donning and doffing a few items, washing, and walking to and from the cafeteria … is non-compensable, however, because it is part of a bona fide meal break period"); *Babcock v. Butler Cnty.*, No. 12-cv-394, 2014 WL 688122 at *8-9 (W.D. Pa. Feb. 21, 2014) (meal break was bona fide where employees were required to remain in the building, in uniform and "on call" during break).  A finding that meal breaks are interrupted or infringed upon only on occasion "weighs against finding that a meal break constitutes work time."  *Botero,* 2014 WL 1248158 at *4.

Breaks of 30 minutes or more are generally sufficient for a bona fide meal break, and shorter periods are allowed under "special conditions."  29 C.F.R. § 785.19(a).  Indeed, in a case much like this one, the U.S. District Court for the District of Colorado recently held that a 30 minute meal break was bona fide, even though employees had less than 30 minutes of actual free time during their break due to the need to doff and don protective clothing before and after eating, because the employees' union had bargained for the 30 minute meal break with full knowledge of the limitations on employees' time and thereby "recognized that these are special conditions within the meaning of the regulation."  *Castenada v. JBS USA*, LLC, No. 08-cv-01833-RPM, 2014 WL 1796707 at *4 (D. Colo. May 6, 2014).

Here, Local 589 and the MBTA agreed to a provision in the applicable collective bargaining agreement providing that breaks of 31 minutes or more would be unpaid as "meal relief."[6]  (*See* PB Decl., Ex. A at 97, 126 and 153.)  Plaintiffs are completely free to do what they wish and to go where they wish during their unpaid mid-day breaks, so long as they start their

---

[6] Much like the plaintiffs' union in *Castenada*, Local 589 bargained for the applicable provision with full knowledge of the fact that employees would sometimes spend part of their midday breaks traveling from one location to another.  2014 WL 1796707 at *4 ("[T]his provision was accepted by the Union with awareness that the reality was that free time for these employees was less than 30 minutes.").  As Judge Posner observed in *Mitchell*, "[d]oubtless the union required compensation for that concession to the employer.  The plaintiffs in this case are trying to upend the deal struck by their own union."  745 F.3d at 846.

second shift on time.  They are not tasked with any work-related duties.  Accordingly, there can be no question that their meal breaks were bona fide.

Even if there were isolated instances when mid-day travel interfered with a specific Plaintiff's mid-day break, the record reveals that the mid-day breaks were long enough that the break remained "bona fide" even with some travel.  Tracey Spencer's mid-day breaks have averaged more than sixty minutes since 2009, and hers is the lowest average; Patrick Hogan's mid-day breaks averaged just over two and half hours.  (PB Decl., ¶ 18.)  The other Plaintiffs' averages were all within that range.  (*Id.*)  As Plaintiffs were unencumbered by any work-related duties during their breaks, their occasional travel through the city at some point during the break – at the time and by the method of their choosing – to reach the starting location of their second shifts does not render their meal breaks compensable worktime.  Because any and all travel occurred during bona fide meal breaks, it is not compensable and Plaintiffs' FLSA claims regarding commuting between shifts must be dismissed.

## III.  Alternatively, Any And All Unpaid Mid-day Travel Takes Place At The End And Beginning Of Two Separate Workdays.

The Portal to Portal Act and its accompanying regulations define the workday as "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 U.S.C. § 790.6(b).  The use of the phrase "in general" indicates that there are exceptions to this so-called "continuous workday" rule.  *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 839-40 (7th Cir. 2014), *request for reh'g denied*, -- F. 3d --, 2014 WL 2200046 (7th Cir. May 28, 2014).  The U.S. Court of Appeals for the Seventh Circuit recently said as much in an opinion penned by Judge Richard Posner: "Workers given a half-hour lunch or other meal break from work are in effect working two four-hour workdays in an eight-and-a-half-hour period."  *Id.* at 839.  Accordingly, activities that were not compensable at

the start and end of the continuous workday were similarly non-compensable when completed at either end of the meal break, which broke the day into two separate workdays.  *Id.* at 840 ("The identical considerations attend payment for time changing at the beginning and end of a meal break as at the beginning and end of … a conventional 'workday'.").

The reasoning of *Mitchell* compels a similar result here.  As described above, Plaintiffs' breaks are unpaid only when they have 31 minutes or more between shifts, thereby breaking up their day into two shorter workdays.  Often their mid-day breaks are considerably longer.  The considerations that attend ordinary commuting at the start of the first shift and at the end of the second shift are identical to those that attend commuting between shifts.  Accordingly, any commute necessary to reach the starting location of the second shift is not compensable travel time.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Partial Summary Judgment on Plaintiffs' claims regarding so-called "start-end time" and on Plaintiffs' FLSA claims regarding mid-day travel between shifts.

Dated: June 16, 2014                         Respectfully submitted,

                                             MASSACHUSETTS BAY
                                             TRANSPORTATION AUTHORITY

                                             By its attorneys,

                                             */s/ Mark W. Batten*
                                             Mark W. Batten (BBO No. 566211)
                                             Laura E. Deck (BBO No. 684569)
                                             PROSKAUER ROSE LLP
                                             One International Place
                                             Boston, MA 02110-2600
                                             Tel:  (617) 526-9600
                                             Fax: (617) 526-9899
                                             Email: mbatten@proskauer.com
                                             Email: ldeck@proskauer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of record, via the Court's CM/ECF system, this 16th day of June, 2014.


                                             */s/ Mark W. Batten*
                                             Mark W. Batten