LOCAL 589, AMALGAMATED          )
TRANSIT UNION, PATRICK F.       )
HOGAN, TIMOTHY C. BROWN,        )
HERIBERTO CORA, ANDREW HUNTER,)
DAVID JORDAN, STEVEN MAHER,     )
DENNIS PERRY, ALLEN R. LEE,     )
TRACEY SPENCER, JEFFREY         )
WILLIAMS, and all others        )
similarly situated,             )
                                )
                Plaintiffs,     )    CIVIL ACTION NO.
                                )    13-11455-DPW
v.                              )
                                )
MASSACHUSETTS BAY               )
TRANSPORTATION AUTHORITY,       )
                                )
                Defendant.      )

MEMORANDUM AND ORDER
March 31, 2015

Plaintiffs, ten named Massachusetts Bay Transportation

Authority ("MBTA") employees and their union, claim that they

are owed payment by defendant MBTA for travel time under Federal

and State wage and hour laws.  Before me are cross-motions for

summary judgment on liability.[1]

---

[1] The Plaintiffs' Motion for Summary Judgment also includes a
motion for class certification.  On December 4, 2014 I denied
this motion without prejudice, to be reasserted after the
determination of dispositive motions.  As will appear, this case
is still not ready to be framed for consideration of class
certification.

## I. BACKGROUND

This action was filed by ten named MBTA employees and their union, Local 589, Amalgamated Transit Union ("Local 589"), as a putative class action on behalf of more than 1,500 MBTA employees. Local 589 represents part-time and full-time MBTA operating employees such as bus operators, rapid transit operators, light rail operators, and customer service agents. The named plaintiffs are all members of Local 589, and all currently or formerly worked as operators of MBTA buses, light rail, or rapid transit equipment.

MBTA operating employees select their daily schedules on a quarterly basis, with selections made in order of bargaining unit seniority. An employee's schedule can consist of one repeated route or several different routes. Employees work either a "straight shift" or a "split shift." A straight shift occurs when an employee works and is paid for a continual period of time during the day, such as from 9 a.m. to 5 p.m. A split shift occurs when an employee works two separate shifts with an unpaid break between shifts, such as from 6 a.m. to 10 a.m. and from 3 p.m. to 7 p.m.

The MBTA and Local 589 are parties to a collective bargaining agreement ("CBA") that controls various aspects of employee compensation. Pursuant to the CBA, all breaks lasting less than a half hour are paid, whereas breaks lasting thirty-

one minutes or more are unpaid as "meal relief" breaks unless an
employee is working a straight shift, in which case all breaks
are paid.  Full-time employees are guaranteed to receive eight
hours of pay each day, and part-time employees may work up to
thirty hours per week.

Employees are free to do whatever they want during breaks
between shifts so long as they report to work on time after the
break is over.  Sometimes an employee's second route during a
split shift starts in a different place from where the first
route ended, which requires the employee to travel between the
two locations during the break.  If a full-time employee works a
split shift in which the second route starts in a different
place from where the first shift ended, the employee receives
twenty minutes of pay in the form of what is called a "swing-on
allowance."  Part-time employees are not paid for any of the
break time within the split shift.

Some of the daily schedules available start and end at the
same location, and others start and end in different locations.
Once employees complete their last route of the day, their
workday is over and they are free to go home.  Employees do not
need to sign out or report back to the location where they began
work or to any other location.  The MBTA does not pay for any
time after the end of the workday, even for employees that have
to return to their starting point to retrieve their cars or

belongings before heading home. Employees occasionally use their mid-day breaks to move their cars to the location where their day will end, while others take public transportation, walk, or carpool to reach their vehicles, their homes, or wherever their next destination is located.

The Plaintiffs contend that they are owed payment under the Federal Labor Standards Act ("FLSA"), Pub. L. 75-718, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201 *et seq.*), the Portal-to-Portal Act, Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251 *et seq.*), which amended the FLSA, and the Massachusetts Wage and Hour Law, Mass. Gen. Laws ch. 151 § 1, for the time that they spend traveling (1) after their last route of the day to return to where they started work ("start-end travel time") and (2) during mid-day breaks when the second part of a split shift requires starting at a location different from where the first part ended ("split-shift travel time").

## II. ANALYSIS

Under Rule 56, I may only grant summary judgment if there is no genuine dispute of material fact and if the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Carmona* v. *Toledo*, 215 F.3d 124, 132 (1st Cir. 2000). The parties are essentially in agreement as to the facts that support these motions.

## A.  Start-End Travel Time

The FLSA requires employers to pay employees a minimum wage, 29 U.S.C. § 206, and to pay overtime for time worked per week that exceeds forty hours.  *Id.* § 207.  "Work" is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer."  *Tenn. Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  *See also Armour & Co.* v. *Wantock*, 323 U.S. 126, 133 (1944)(noting that even active exertion is not required, because a person can be hired to do nothing).  This includes work "done at least in part for the benefit of the employer, even though it may also be beneficial to the employee. 'The crucial question is not whether the work was voluntary but rather whether the (employee) was in fact performing services for the benefit of the employer with the knowledge and approval of the employer.'"  *Secretary of Labor, U.S. Dep't of Labor* v. E. R. *Field, Inc.,* 495 F.2d 749, 751 (1st Cir. 1974)(quoting *Republican Publishing Co.* v. *American Newspaper Guild*, 172 F.2d 943, 945 (1st Cir. 1949)).  The Massachusetts Wage and Hour Law, Mass. Gen. Laws ch. 151, § 1, was "intended to be 'essentially identical'" to the FLSA.  *Mullally* v. *Waste Management of Mass., Inc.*, 895 N.E.2d 1277, 1281 (Mass. 2008).

The Portal-to-Portal Act amended the FLSA, establishing that regular commuting activities are not compensable.  The Act states that an employer need not pay for an employee's "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "activities which are preliminary to or postliminary to said principal activity or activities" if that travel "occur[s] either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a). Department of Labor regulations further clarify that "ordinary home to work travel" is not compensable work time, regardless whether an employee "works at a fixed location or at different job sites." 29 C.F.R. § 785.35.

Plaintiffs argue that when their shifts begin in one location and end in another, they should be compensated for the time that it takes them to travel from the end of their assigned route back to where they began.  The fact that routes are designed with different start and end points is undisputedly for the convenience of the MBTA, not of its employees.  It is also undisputed that once an employee ends the last scheduled route of a workday, the employee is not required to do any work for

the MBTA and is not required to report back to the starting
point to clock out or for any other reason.

The Plaintiffs contend that the time spent traveling from
the end of a route back to the start cannot be considered work-
to-home travel, because employees often have to return to the
starting point to retrieve their cars before heading home.  They
point out that MBTA employees often report for work before or
finish work after the times that the MBTA is running and
therefore cannot rely entirely on public transportation.  The
MBTA counters that it does not require employees to drive to or
from work, and that once an employee's final route ends, the
employee is free to go wherever and do whatever she wishes with
her time.  The MBTA argues that there is nothing about the fact
that an employee's evening commute may be longer or shorter than
the same employee's morning commute that makes that commuting
time compensable.

Traditional commuting time is plainly excluded from the
FLSA by the Portal-to-Portal Act.  When there is no clear line
between the end of an employee's work and the beginning of that
same employee's commute, the touchstone is the language of the
Portal-to-Portal Act distinguishing between an employee's
"principal activity" and non-principal preliminary or
postliminary activity.

The delineation between principal activity and non-principal travel time has been analyzed by a number of federal courts in the context of jobs for which employees travel to multiple job sites. For example, in *Kavanagh* v. *Grand Union Co., Inc.*, 192 F.3d 269 (2d Cir. 1999), the plaintiff was a refrigerator and utility mechanic who was employed to provide mechanic services at over fifty Grand Union stores in Connecticut and New York, including some in upstate New York. He was not paid for the time he spent driving to the first site to which he was assigned or the time he spent driving back from the site at which he ended his workday. Due to the nature of the job and the geographic scale that he was assigned to cover, he often spent multiple hours per day in unpaid travel. The Second Circuit held that this travel was non-compensable regardless of the large distances traveled, and found that the fact that Grand Union benefited from being able to assign a single employee to cover such a large geographic area did not change the calculus. *Id.* at 273. The Second Circuit further held that the term "normal travel" in the context of the Department of Labor Regulation that provides, "Normal travel from home to work is not worktime," 29 C.F.R. § 785.35, "does not represent an objective standard . . . Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Id.* at 272.

In *Rutti* v. *LoJack Corp.*, 596 F.3d 1046 (9th Cir. 2010), the plaintiff traveled around in an employer-owned vehicle to customer's cars, where he installed and repaired theft protection systems. He was paid from the time that he arrived at the first job site at the start of the workday to the time he left the last job site at the end of the workday. The court held that his travel time before the first job site and after the last job site of the day was not compensable under federal law (although it was found compensable under California state law). *Id.* at 1051-54, 1061.

Similarly, in *Baker* v. *GTE North, Inc.*, 110 F.3d 28, 29-31 (7th Cir. 1997), plaintiff electricians could either pick up an employer-owned vehicle at a central location before taking it to work sites or could keep the vehicle at their homes. Employees were compensated only for the time between their arrival at the first work site and their completion at the last work site. *Id.* at 29. The Seventh Circuit held that the other travel time was not compensable under federal law. *Id.* at 30.

The Massachusetts case that mostly closely analyzes the distinction between preliminary or postliminary work and principal activity is *Dooley* v. *Liberty Mutual Ins. Co.*, 307 F. Supp. 2d 234, 247 (D. Mass. 2004). In *Dooley*, Judge Keeton held as a general rule, in accord with extensive case law from other circuits, that "commuting is not a principal activity." *Id.* at

246.  The decision carefully distinguishes between home-to-work travel undertaken after employees began their principal activities at home and home-to-work travel by employees who conducted no principal activity at home.  *Id.* at 244-45. Compensation was required for the home-to-work travel of the first group but not for that of the second.  *Id.*

Some cases pose factual questions about the nature of an employee's "principal activity" and whether the travel activity is part of that.  In *E.R. Field*, 495 F.2d 749, the First Circuit upheld a district court's findings after a non-jury trial that an electrician who drove an employer's vehicle containing tools and other workers from the shop to site visits and back should be compensated for the travel time to and from the shop and the various sites.  The Court held that the Portal-to-Portal Act exception to compensation does not reach "any work of consequence performed for an employer," and that the district court's factual findings that the truck the plaintiff drove to and from the shop was used as an integral and indispensable function of the employer's business precluded coverage of the Portal-to-Portal Act to the travel time at issue in the case. *Id.* at 751 (quoting Department of Labor Regulation, 29 C.F.R. § 790.8(a)).

In the case before me, however, there is no factual dispute about the activity of MBTA employees after the completion of

their final route of the day; employees are completely free to go wherever they want and they are not required to check out or return any equipment to their starting point. MBTA employees plainly do not engage in any principal activity after completing their final route of the day.

Plaintiffs argue that the cases discussed above, in which workers are not compensated for the time they spend traveling after they complete their principal activity, differ from their situation, because in the cases discussed above the workers had immediate access to a vehicle at the end of the workday. In contrast, the MBTA workers who end their routes in a location different from where they started necessarily end their route on foot because their car cannot be at both locations at once. The plaintiffs do not, however, provide any support for their contention this is a distinction that makes a difference or that an employee's need to travel to get to her car before driving home is any different than any employee's commute that is more difficult or inconvenient in one direction than the other. The inconvenience or difficulty of a commute does not provide an exception to the Portal-to-Portal Act. *See, e.g.*, *Kavanagh*, 192 F.3d 269.

There are two cases concerning FLSA claims by transit employees that more closely parallel the facts in this case. The first is *United Transp. Union Local 1745* v. *City of*

-11-

*Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999). In *Albuquerque*, city bus drivers sued the city under the FLSA, seeking compensation for their split shifts, which will be discussed further below in Section II.B. and for time spent traveling on city-operated shuttles to and from their first or last bus route of the day. The Tenth Circuit held that the undisputed evidence showed that employees were free to go home any way they chose after their last assignment, and that time spent shuttling to or from the first and last bus route of the day is "classic commuting-to-work time, excluded from compensation by the Portal-to-Portal Act." *Id.* at 1120. The court further stated that the fact that the employee's car is not available at the relief point where the employee ends work for the day does not transform this travel from commuting time into compensable time. *Id.* at 1120-21. The court concluded its analysis by stating: "While it may be more awkward or inconvenient to arrange for transportation to and from work where the employees, like the drivers here, may begin or end their work day at diverse locations, such awkwardness or inconvenience does not change an otherwise non-compensable commute into compensable work time." *Id.* at 1121.

In contrast, in *Gilmer* v. *Alameda-Contra Costa Transit Dist.*, 2010 WL 289299 (N.D. Cal. Jan. 15, 2010), Judge Wilken of the Northern District of California found start-end travel time

-12-

to be compensable for bus drivers employed by the Alameda-Contra Costa Transit District. Judge Wilken determined that start-end travel time is different from work-to-home commute time because the transit workers "do not voluntarily choose to end their runs at a different location from where they began," but rather are compelled to do so by the defendant's scheduling arrangements. *Id.* at *6. The court concluded, "[a]bsent fortuitous circumstances, the employees must spend time returning to their starting point before beginning their commute home. This is not normal commute time." *Id.*

Plaintiffs urge me to distinguish the outcomes in these two cases based on the relative sizes of the transit systems involved. The transit system of the City of Albuquerque was significantly smaller than that of Alameda-Contra Costa, which in turn is significantly smaller than the MBTA system at issue here. By their reasoning, the MBTA's even larger and more complex system means that I should be even more likely to find start-end travel time compensable. I do not find the relative sizes of the transit systems to be a material factor in my analysis, nor a helpful way to distinguish between these two cases. Rather, the difference in outcome is more accurately traced to the reasoning used in each. The reasoning of *Gilmer,* 2010 WL 289299 *6,7, is rooted in the outlier idea that employees are not engaged in their ordinary work-to-home travel

when their circumstances require them to travel in a way that is not effectively voluntary and does not directly benefit themselves.

The idea of voluntariness as a necessary component of ordinary work-to-home travel time has been explicitly rejected by some courts, *see, e.g., Grifin* v. *S & B Engineers and Constructors, Ltd.*, 507 Fed. App'x. 377, 383-84 (5th Cir. 2013)(per curiam)(finding commuting time non-compensable even where construction workers were required to take employer buses to worksite), despite the fact that the language of voluntariness is often used to bolster courts' conclusions that that no work occurs during travel time, *see, e.g. Vega* v. *Gasper*, 36 F.3d 417, 425 (5th Cir. 1994)(holding that farm workers who voluntarily choose to ride employer's bus to and from field were engaged in noncompensable travel). The idea of voluntariness is also not found in the Portal-to-Portal Act itself.

*Gilmer's* focus on voluntariness rests on language from the Supreme Court decision *Tennessee Coal*, which held that the travel at issue in that case was "not primarily undertaken for the convenience of [the employees] and bears no relation whatever to their needs." *Gilmer* at *6 (quoting *Tennessee Coal*, 321 U.S. at 599). While the Supreme Court in *Tennessee Coal* did find travel by miners within a mine compensable in part based on

the fact that it is done for the benefit of the employer, not the employee, it also relied heavily on the dangers and exertions required to travel in mine shafts, a circumstance absent here.[2]  In any event, *Tennessee Coal* was decided before the passage of the Portal-to-Portal Act in 1947.  The language from *Tennessee Coal* about whether travel through a mine is work within the meaning of the FLSA is not instructive regarding the exception later carved out of the FLSA through the Portal-to-Portal Act, which was the Congressional response to the Court's treatment of travel time in wage and hour law.

Contrary to the decision in *Gilmer*, I find that the proper inquiry to determine the applicability of the Portal-to-Portal Act turns not on employee voluntariness or convenience, but on whether the start-end travel occurs after the completion of the MBTA employees' principal activity.  Plaintiffs' principal activity is operating MBTA vehicles in service of the transit system.  The parties agree that the plaintiffs are not required by the MBTA to return to their starting location at all, let

---

[2] I note that the MBTA contends that even if I were to consider voluntariness, the evidence shows that the MBTA employees pick their routes and that therefore the decision to choose a route with an ending location different from the start is a voluntary choice.  The MBTA marshalls statements in the plaintiffs' declarations and responses to interrogatories, showing the various criteria that employees use to pick their routes, including the routes with the earliest end times, the routes with the most convenient work, and routes the employee doesn't mind driving.

alone for any reason related to their principal activity.  I
conclude that the Portal-to-Portal Act excludes start-end travel
time from hours worked under the FLSA.

**B.  *Split-Shift Travel Time***

Plaintiffs next contend that they should be compensated for
split-shift travel time.  Split shifts are schedules in which an
employee is assigned to a first route, followed by a break, and
then a second route.  Split-shift travel time is the time it
takes to travel from the end location of a first route to the
starting point of a second route during a mid-day break.  Full-
time employees who have to travel during split-shift breaks are
currently compensated for twenty minutes of that travel as
"swing-on time," but they are not compensated for the time that
they spend traveling in excess of twenty minutes.  Part-time
employees are not paid at all for travel that occurs during
these breaks.

Split shifts result in mid-day breaks, some of which are
several hours long.  While the summary judgment record includes
limited individualized information about the plaintiffs'
schedules, the parties agree that since the start of 2009, the
average mid-day break periods for the plaintiffs before me
ranged from sixty-one minutes for Platiniff Spencer to two hours
and thirty-one minutes for Plaintiff Hogan.  The summary

judgment record does not break these numbers down further by quarter.

The FLSA, as clarified through the Department of Labor regulations, counts time traveling that is "part of [an employee's] principal activity, such as travel from job site to job site during the workday," as hours worked.  29 C.F.R. § 785.38; *see also Dooley*, 307 F. Supp. 2d at 245 (travel between home and off-site location is compensable when work is conducted at home, because this is the same as travel between two worksites).

The travel required of employees during the split-shift break from the end of a first route to the beginning of the second is done at the direction of the MBTA to accommodate the MBTA's schedule.  The employees are permitted to undertake that travel in any manner that they choose and at any point during the break, so long as they are at the starting point of the second route in time to operate the MBTA vehicle to which they are assigned.  The plaintiffs do not seek compensation for the entire break period, during which they acknowledge "[e]mployees are free to do whatever they wish and to go wherever they wish . . . so long as they report to work on time after their break." The question presented by the summary judgment motions is whether travel time required by the MBTA to take place during an otherwise non-compensable break is compensable.

The FLSA and Department of Labor regulations do not directly address travel time that occurs during a break. At least two possible analogies present themselves in this case. As to the first, the MBTA urges me to consider the split-shift break like a "bona fide meal period," a break for purposes of eating regular meals that is not considered worktime under the FLSA. 29 C.F.R. § 785.19.

## 1. "Meal Break" Analogy

While the Department of Labor regulations state that an "employee must be completely relieved from duty" for a meal period to be bona fide and therefore uncompensated, *id.*, this rule has not been followed by the majority of circuits. *Harris* v. *City of Boston*, 253 F.Supp.2d 136, 143 (D. Mass. 2003)(explaining that the majority of circuits draw on the Supreme Court's definition of work from *Tennessee Coal*, 321 U.S. at 598, as being "primarily for the benefit of the employer" in determining whether a break must be compensated). The majority of circuits, and judges of the District of Massachusetts, have determined that a meal period is bona fide unless "an employee predominantly spends the time performing activities for the employer's benefit." *Botero* v. *Commonwealth Limousine Service, Inc.*, 2014 WL 1248158 (D. Mass. March 25, 2014)(quoting *Harris*, 253 F.Supp.2d at 143-44 (explaining that this standard has been

adopted by at least the Fourth, Fifth, Sixth, Seventh, and Eighth Circuits)).

Limited employment restrictions or impositions on an employee's time and behavior during a meal break may not affect the unpaid nature of a meal break. For example, in *Mitchell*, 745 F.3d at 741, *Sepulveda* v. *Allen Family Foods*, Inc., 591 F.3d 209, 216 n.4 (4th Cir. 2009), and *Castaneda* v. *JBS USA, LLC*, 2014 WL 1796707 at *4 (D. Colo. May 6, 2014), courts held that limited time spent during lunch breaks "donning and doffing" or changing out of protective clothing did not make the meal time compensable.[3] The MBTA argues that, similarly, some limited

---

[3] Many of the cases about donning and doffing concern whether employees can collectively bargain away the right to be compensated for certain activity. As a general rule, the protections of the FLSA cannot be bargained away or waived, but there are specific sections, including 29 U.S.C. § 203(o), which modified the FLSA to permit compensation for changing clothes to be modified by custom, practice, or the terms of a collective bargaining agreement, at least at the beginning or end of each workday. In this case, the MBTA argues that the plaintiffs are trying to receive compensation for break time that was not compensated under the CBA and suggest that this is improper. They have not pointed, however, to any FLSA amendment or exception that would permit a union to bargain away compensation for travel that is properly compensated under the FLSA. The MBTA cites *Castaneda*, 2014 WL 1796707 in support of its argument, but in *Castaneda*, Judge Matsch pointed to the CBA as evidence that the meal break was "bona fide" despite the need to don and doff clothing, not as evidence that the CBA in any way modified the employees' rights under the FLSA.

obligation to travel during a split-shift break should not mean that the split-shift travel time must be compensated.

After considering the "bona fide meal break" cases and regulations, I do not find this analogy to be especially helpful. In the meal break cases, plaintiffs claimed that the entire break should be compensated due to some work-related activity that they were required to perform during part of the break. In addition, the meal break cases concern either incidental or occasional work. *See, e.g.*, *Harris* 253 F.Supp.2d at 145 (plaintiffs were on-call, but still able to enjoy their mealtime); *Sepulveda*, 591 F.3d at 216 n. 4 (plaintiffs did not need to be compensated for the brief time it took to don and doff protective gear). For those situations, the predominance test, which considers whether the break as a whole still permits the employee to "comfortably and adequately pass[] the mealtime," makes sense as an assessment of whether the employee is able to make use of the meal break.

In contrast, in this case, the question whether the travel that employees are required to undertake during the split-shift break is predominant relative to the free time during the break is much less helpful. First, the plaintiffs in this case are not seeking compensation for the entire break period, but rather solely for the time they spend traveling. Second, the lengths of the breaks in this case are significantly larger than the

often half-hour breaks discussed in the meal break cases.
Third, an employee required to travel during a split-shift break
is required to do so regularly throughout the entire quarter for
which she is assigned to that schedule.  This makes the travel
much more than merely incidental work that might occasionally
interfere with a meal break.

### 2. Employee Waiting Time Analogy

I find that a more helpful analogy is to the compensable
and non-compensable parameters of employee waiting time.  The
regulations explain, "Periods during which an employee is
completely relieved from duty and which are long enough to
enable him to use the time effectively for his own purposes are
not hours worked."  29 C.F.R. § 785.16.  Under the FLSA, the
distinction between compensable and non-compensable waiting
times is whether an employee "waited to be engaged" or is
"engaged to wait."  *See Skidmore* v. *Swift*, 323 U.S. 134, 137
(1944).

The regulations provide a helpful illustration of how the
obligations on the worker during the waiting time can affect
whether time is compensable or non-compensable.

> A truck driver who has to wait at or near the job site
> for goods to be loaded is working during the loading
> period. If the driver reaches his destination and
> while awaiting the return trip is required to take
> care of his employer's property, he is also working
> while waiting. In both cases the employee is engaged
> to wait. Waiting is an integral part of the job. On

the other hand, for example, if the truck driver is
sent from Washington, DC to New York City, leaving at
6 a.m. and arriving at 12 noon, and is completely and
specifically relieved from all duty until 6 p.m. when
he again goes on duty for the return trip the idle
time is not working time. He is waiting to be engaged.

29 C.F.R. § 785.16

While this illustration presents the distinction as an all-
or-nothing proposition, I see no reason why a truck driver who
spent the first hour of the six-hour period waiting for goods to
be loaded and then has five hours of free time would not be
compensated for his waiting during the first hour even if not
compensated for the idle time of the next five.

In *Albuquerque*, the panel majority divided compensable and
non-compensable periods of a mid-day break in just this manner.
The court held that there was a "meaningful distinction" for
purposes of § 785.16 between the time spent traveling from the
end of one route to the beginning of a second route, and "the
remainder of the drivers' split shift periods, during which they
have an extended block of time in which to pursue, as most
testified they do, purely personal pursuits."  178 F.3d at 1119.
The court in *Albuquerque* held that the split-shift travel time
was compensable.[4] *See also Gilmer*, 2010 WL 289299 at *8(quoting

---

[4]  In *Albuquerque*, however, the lower court found that only
transit on city-provided shuttles was compensable.  The
employees did not appeal the ruling that independent travel was
not compensated.  Consequently, the Tenth Circuit did not
address independent travel during split shifts in its decision.

-22-

*Albuquerque* and similarly finding split-shift travel time

compensable).

While I have not come across other cases that explicitly

ascribe compensable time to only a portion of otherwise non-

compensable time, other courts often implicitly acknowledge that

work that follows or is imbedded in otherwise non-compensable

time is nonetheless compensable.  *See, e.g., Rutti*, 596 F.3d at

1061(principal activity conducted after the end of the workday

is compensable, although the intervening commuting time was not;

because the activity could have been done at any time, the

compensability of the work did not affect the non-compensability

of the commuting time).  There is nothing about the fact that

the travel time occurred during an otherwise non-compensable

break that requires me to analyze the compensability of the

travel time any differently than any other compensable or non-

compensable time is analyzed.

### 3.  Break Time as Portal-to-Portal Act Commuting Time

The MBTA also raises an alternative theory, arguing that

the MBTA properly refused to compensate for travel between

routes because the two shifts worked by employees during split

shifts are, in effect, two separate workdays.  If the two shifts

are separate workdays, then the Portal-to-Portal Act, as

---

*See Albuquerque*, 178 F.3d at 1118, n.12.  All of the split-shift
travel at issue in the case before me is independent travel.

discussed above, would apply to travel preliminary or postliminary to the employees' principal activity. If the shifts are part of the same day, however, the Portal-to-Portal Act has "no effect on the computation of hours that are worked 'within' the workday." *IBP, Inc.* v. *Alvarez*, 546 U.S. 21, 28 (2005).

In *Mitchell* v. *JCG Indus., Inc.*, 745 F.3d 837, 839-40 (7th Cir. 2014), the Seventh Circuit suggested that a lunch break could divide a standard workday into two separate workdays for purposes of the FLSA. *Mitchell* considered whether compensation was required under the FLSA for time spent changing clothes during a lunch break, or whether this could be left to the process of collective bargaining. Writing for the majority, Judge Posner wrote that "workday" has a fluid meaning that could include a four-hour shift separated from another four-hour shift by a meal break. He also determined that such an understanding was appropriate given the facts of that particular case.

While the court in *Mitchell* is correct that the term "workday" has an elusive meaning, I do not find helpful or persuasive the conclusion in that case that a break as brief as a meal could delineate a workday. The Department of Labor regulations define "workday" to mean "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all

time within that period whether or not the employee engages in work throughout all of that period." 29 C.F.R. § 790.6(b). This regulation reflects the Supreme Court's prior decisions adopting the "continuous workday rule." *IBP*, 546 U.S. at 29. The regulations specify that breaks, including lunch and rest breaks, as well as periods in which employees do not engage in work, do not interrupt a single workday. As Judge Posner recognized in *Mitchell*, that decision represents an "exception." *Mitchell*, 745 F.3d at 840. If I were to find that the split shift schedule results in two separate workdays, this exceptional reading of the statute and regulations would swallow the rule, not to mention result in over ten workdays a week for any MBTA employee working split shifts each day.

The precise bounds of the term "workday" are difficult to discern. While the majority in *Albuquerque*, 178 F.3d 119, suggested that any definition of workday other than a 24-hour period is unworkable, Judge Briscoe noted in dissent that such a rule would result in illogical applications to workers who work irregular hours, with evening hours one day and morning or afternoon hours the next day. *Id.* at 1124. I agree, and note that similar problems would arise with medical professionals and others who regularly work shifts longer than twenty-four hours at a time. He proposed a more flexible definition of a workday as being "a period of work (*i.e.*, a period in which an employee

is engaged in his or her principal activities) separated on
either side by a sufficient amount of off-duty time (*e.g.*, six-
eight hours)." *Id.* at 1125. A more flexible definition seems,
to me, to be appropriate, although given the complexity of
people's working lives, even the definition proposed by Judge
Briscoe will run up against further challenging examples.[5] To
resolve this matter, I need not determine the precise bounds of
a "workday" in a manner that applies to all employment
situations. For present purposes, I find that the split shifts
worked by the plaintiffs occur in a single workday, and
therefore that the Portal-to-Portal Act does not apply.

The two cases that have considered compensation of split-
shift travel time for transit employees have both found that
travel time during split shifts is compensable. *See*
*Albuquerque*, 178 F.3d 1110; *Gilmer*, 2010 WL 289299. Both
resolved this issue on summary judgment. Here, despite the
parties' apparent agreement about the facts presented in the
Defendant's Statement of Undisputed Facts pursuant to Local
Civil Rule 56.1, I am not able to resolve these split-shift

---

[5] For example, at oral argument the plaintiffs mentioned that
part-time MBTA employees may have seven- or eight-hour breaks
between their split shifts. I am not considering at this time
any non-Plaintiff employees, and the plaintiffs in this case
have not had such extended breaks. Any further consideration of
the significance of the length of the break would likely involve
close analysis of the length of breaks for individuals other
than the named plaintiffs, as well as the customs and practice
of the MBTA. That must await further development of this case.

travel claims on summary judgment.  The summary judgment record

contains significant gaps about the individual travel time and

break schedules of the plaintiffs as well as information related

to the custom and practice of the MBTA that prevent me from

determining as a matter of law whether the travel time of the

plaintiffs in this case during their split-shift breaks is

compensable or non-compensable.  In the absence of specific

information about the break and travel times of the plaintiffs

in this case, I cannot determine whether there was any violation

of the FLSA or whether any travel time beyond that for which the

plaintiffs were compensated may be *de minimis* in individual

cases.

### III. CONCLUSION

For the reasons set forth above, I conclude that start-end

travel time is excluded from compensable work time under the

FLSA and the Portal-to-Portal Act.  I cannot determine on the

record before me whether any of the plaintiffs' split-shift

travel time is compensable under the FLSA.  Accordingly, I GRANT

Defendant's Motion for Summary Judgment (Doc. No. 44) as to

Count II which concerns start-end travel time and DENY the

motion as to Count III which concerns split-shift travel time; I

DENY Plaintiffs' Motion for Summary Judgment (Doc. No. 51) in

its entirety.  As a housekeeping measure, I order Count I, a separately stated count under the Portal-to-Portal Act DISMISSED as duplicative of Counts II and III under the Fair Labor Standards Act, of which the Portal-to-Portal Act is simply an amendment.

The parties are directed to confer and submit a joint status report by April 17, 2015, outlining a proposal for moving this case forward to final judgment consistent with this memorandum and order.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE