UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LOCAL 589, AMALGAMATED TRANSIT UNION, PARTICK F. HOGAN, TIMOTHY C. BROWN, HERIBERTO CORA, ANDREW HUNTER, DAVID JORDAN, STEVEN MAHER, DENNIS PERRY, ALLEN R. LEE, TRACEY SPENCER, JEFFREY WILLIAMS, and all others similarly situated, | * * * * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 13-cv-11455-ADB |
| v. | * * | |
| MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, | * * * | |
| Defendant. | * | |

**Memorandum and Order**

September 20, 2016

BURROUGHS, D.J.

Plaintiffs, ten named Massachusetts Bay Transportation Authority ("MBTA") employees and their union, claim that they are owed compensation from defendant MBTA for after-work and between-shift travel, pursuant to the Fair Labor Standards Act and Massachusetts wage and hour laws. Currently pending is the Plaintiffs' motion for class certification under Fed. R. Civ. P. 23 ("Rule 23"). [ECF No. 82]. For the reasons stated herein, the motion for class certification is DENIED.

## I.    Factual and Procedural Background

Plaintiffs initiated this putative class action on June 17, 2013, on behalf of MBTA bus operators, train operators, train attendants, streetcar operators, trackless trolley operators and customer service agents who were allegedly required to travel from one assigned location to

another during their workday without compensation. [ECF No. 1]. The named Plaintiffs are ten

MBTA employees, who are either full-time bus operators or train operators/attendants, and Local

589, Amalgamated Transit Union ("Local 589"), the union that represents the affected MBTA

employees. Id. at ¶¶ 1-11.

In their Amended Complaint, filed in November 2013 [ECF No. 31], Plaintiffs claimed

that they were not being adequately compensated for after-work and between-shift travel. As

alleged, part-time and full-time MBTA employees often end their work days in a place different

from where they began, or start shifts some place other than where their previous shift ended.

[ECF No. 31 ¶¶ 25-31]. According to Plaintiffs, the employees are generally not compensated for

the time required at the end of the day to return to their original starting point ("start-end" travel

time) or between shifts to change locations ("split-shift" travel time). Id. In their Amended

Complaint, Plaintiffs asserted that they are owed compensation for this start-end and split-shift

travel time under the United States Portal to Portal Act, 29 U.S.C. § 251 et seq., the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq., and the Massachusetts Wage Act, Mass. Gen. L. ch. 151,

§ 1 et seq. Id. ¶¶ 32-44.

In a February 4, 2014 electronic order, Judge Woodlock, who was then assigned to this

case, denied without prejudice both the MBTA's partial motion to dismiss and Plaintiffs' motion

to certify the class. [ECF No. 39]. Plaintiffs had moved to certify a class of all persons who,

during the period covered by the lawsuit, were employed by the MBTA as bus operators, rapid

transit motorpersons, street car motorpersons, customer service agents, train attendants, gate

persons, hub station monitors and hub station access clerks. [ECF No. 29].

In June 2014, the parties cross-moved for summary judgment and Plaintiffs renewed their

motion for class certification. [ECF Nos. 44, 51]. At the December 2014 hearing, Judge

Woodlock denied the renewed motion for class certification without prejudice. [ECF No. 61]. In a March 31, 2015 opinion, Judge Woodlock granted the MBTA's motion for summary judgment in part [ECF No. 65], holding that Plaintiffs' claims for start-end travel compensation should be dismissed, but that their claims for split-shift travel compensation could proceed, pending further factual development. He found that split-shift travel is generally compensable under the FLSA, but that without additional information, such as the individual travel time and break schedules of the employees, he could not determine whether each individual plaintiff had been undercompensated. Id. at 26-27. In his summary judgment opinion, Judge Woodlock reiterated that this case was "not ready to be framed for consideration of class certification." Id., at 1, n. 1. On June 9, 2015, while discovery was ongoing, this matter was randomly reassigned to this Court after Judge Woodlock assumed senior status [ECF No. 70].

On October 15, 2015, Plaintiffs moved to amend the complaint to add as named plaintiffs approximately 1,600 MBTA operating employees of various classes who had allegedly been affected by the MBTA pay practices at issue. [ECF No. 73]. The Court denied the motion on November 20, 2015, finding that the Plaintiffs could not use a motion to amend, filed two-and-a-half years in the case, to circumvent the challenges of class certification. [ECF No. 77]. Given the number and variety of employees the Plaintiffs sought to add, the Court found that "[a]llowing the Motion to Amend would thwart judicial efficiency and create substantial logistical difficulties in an already fact-intensive, protracted case." Id. at 6-7.

After denying the Motion to Amend, the Court entered a modified scheduling order requiring the Plaintiff to move for summary judgment by March 9, 2016. [ECF No. 79]. Rather than moving for summary judgment, however, on March 4, 2016 the Plaintiffs again moved for class certification under Rule 23, seeking certification of a class "comprised of MBTA workers

who were compelled to travel from one place in the MBTA service area to another, midday,

without compensation in order to resume duties operating MBTA vehicles." [ECF No. 83 at 5].

Defendants opposed the motion on March 18, 2016 [ECF No. 85], Plaintiffs replied on April 1,

2016 [ECF No. 87], and the Court held oral argument on August 12, 2016. [ECF No. 98]. After

oral argument, each party filed a supplemental brief. [ECF Nos. 99 and 100].

## II.    Legal Standard

To obtain class certification under Rule 23, Plaintiffs must first satisfy the four

requirements of Rule 23(a). They must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2)
> there are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements "ensure[] that the named plaintiffs are appropriate

representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes,

564 U.S. 338, 3449 (2011). "The Rule's four requirements—numerosity, commonality,

typicality, and adequate representation—'effectively limit the class claims to those fairly

encompassed by the named plaintiff's claims.'" Id. (quoting General Telephone Co. of

Southwest v. Falcon, 457 U.S. 147, 156 (1982)).

Because the Plaintiffs seek money damages, they must also satisfy Rule 23(b)(3)'s

predominance and superiority requirements. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036,

1053 (2016) (citing Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)). Rule 23(b)(3)

requires a showing that "the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

"In adding predominance and superiority to the qualification-for-certification list, the Advisory Committee sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quotation marks omitted).

In addition to the explicit requirements of Rule 23, there is also an implicit requirement that the proposed class be ascertainable. Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 9 (D. Mass. 2010) ("While not explicitly mentioned in Rule 23, an implicit prerequisite to class certification is that a 'class' exists—in other words, it must be 'administratively feasible for the court to determine whether a particular individual is a member.'") (quoting Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000)); see also In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015) ("[T]he definition of the class must be 'definite,' that is, the standards must allow the class members to be ascertainable."). A class is ascertainable where it is defined in terms of an "objective criterion." Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." Wal-Mart Stores, Inc., 564 U.S. at 350. The Court must engage in a "rigorous analysis," which may involve "prob[ing] behind the pleadings" in order to decide whether certification is appropriate. Id. (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)).

## III.    Discussion

Rather than move for summary judgment, Plaintiffs have again moved for class certification, despite the fact that class certification has already been denied twice—first in

February 2014 and then in December 2014. The Plaintiffs have not demonstrated any change in the underlying facts nor any discovery developments that would warrant a different outcome this time around.

The breadth of the proposed class—which includes full-time and part-time employees, bus and streetcar operators, and any number of split-shift travel combinations—virtually assures that individualized questions would overwhelm any common ones. Rule 23(b)'s demanding predominance standard requires that common questions so dominate the inquiry that class treatment "would achieve economies of time, effort and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prod., Inc., 521 U.S. at 615 (1997) (quotations marks omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc., 136 S. Ct. at 1036 (quotation marks omitted).

Plaintiffs have not satisfied this rigorous standard. Whether an MBTA employee engaged in uncompensated split-shift travel, and how much travel time was uncompensated, is a fundamentally individualized inquiry. In any given year or even quarter, there are thousands of split-shifts with different swing-on and swing-off points and multiple ways to get from one point to another. The proposed class would include employees who traveled between different locations using different modes of transportation and under different conditions (*i.e.*, during rush hour, on weekends, during snow storms, etc.). As named-Plaintiff Patrick Hogan explained, his own travel time could vary from "5 to 45 minutes depending on" factors such as "where I was traveling to and from" as well as "traffic, weather, delays with service, etc." [ECF No. 85-3 at 3]. Each potential class member's travel time is similarly variable and specific to him or her. The

MBTA's liability to each potential class member turns on individualized questions that vary not only from individual class member to individual class member, but from day-to-day for a particular individual.

Plaintiffs claim that the Supreme Court's recent decision in <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036 (2016) supports class certification. <u>Tyson Foods</u>, however, is not only distinguishable but also demonstrates why class certification would be inappropriate here. In <u>Tyson Foods</u>, employees in the kill, cut, and retrim department of a pork processing plant in Iowa sued Tyson, their employer, to receive compensation for the time spent "donning and doffing" protective gear before and after their shifts. The Supreme Court found that the individual employee's experiences were sufficiently similar—"each employee worked in the same facility, did similar work, and was paid under the same policy"—that the Plaintiffs could use an expert's representative sample of the time it took workers to change clothes in order to establish class-wide liability. <u>Tyson Foods, Inc.</u>, 136 S. Ct. at 1048. An expert determined the average amount of time workers spent taking protective gear on and off, based on video recordings of donning and doffing at the plant. The Supreme Court found that the expert's estimate, which would have been sufficient to sustain a jury finding in an individual employee's action, ensured that individualized questions would not predominate. <u>Id.</u>

The members of the <u>Tyson Foods</u> class were seeking compensation for essentially the identical task—donning and doffing before work in a single Iowa pork processing plant—and the approximate duration of that task could be estimated through representative sampling. Here, although the members of the class are all seeking compensation for the same activity—split-shift travel—it is not as readily generalizable as the donning and doffing in <u>Tyson Foods</u>. As already discussed, members of the class traveled to different locations, under different conditions, using

different modes of transportation. Furthermore, pursuant to the Collective Bargaining Agreement between Local 589 and the MBTA, employee travel was compensated differently depending on, among other things, whether they were part-time or full-time and if they traveled back to their original starting point or elsewhere between shifts.[1] Further, unlike in <u>Tyson Foods</u>, Plaintiffs (three years into this litigation) have not offered any tangible way to overcome these individual differences, such as through expert testimony or other statistical evidence.

Deciding what questions predominate requires the court to "formulate some prediction as to how specific issues will play out." <u>Waste Mgmt. Holdings, Inc. v. Mowbray</u>, 208 F.3d 288, 298 (1st Cir. 2000); <u>see also</u> <u>Madison v. Chalmette Refining, LLC</u>, 637 F.3d 551, 555 (5th Cir. 2011) ("Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider how a trial on the merits would be conducted if a class were certified.") (quotation marks omitted). Given the late stage of the proceeding, it is not difficult to predict how a trial would play out. The one question common to the proposed class members—whether split-shift travel is compensable under the FLSA—has already been resolved, and what remains is to determine individual liability and damages, which will be a highly individualized undertaking, or at least would have to be done with much more discrete groups of employees than the class proposed here. In other words, while split-shift travel is generally compensable, whether the MBTA is liable to a specific employee for split-shift travel, and then for how much, is beset with individual questions that cannot be efficiently resolved by a

---

[1] Under the CBA, if a full-time employee works a split shift and the second route starts in a different place from where the first shift began, the employee receives twenty minutes of pay, called a swing-on allowance. [ECF No. 66 at 1]. As Judge Woodlock noted, even employees that receive a swing-on allowance may be undercompensated, since they are not paid for any travel time in excess of twenty minutes. [ECF No. 65 at 16].

class action that involves such a large group of employees, routes, methods of transportation, and the like.

This outcome should not come as a surprise to the Plaintiffs. When the parties' moved for summary judgment, Judge Woodlock could not fully resolve this action because he needed additional information about even the individual named Plaintiffs. He found that, "[t]he summary judgment record contain[ed] significant gaps about the individual travel time and break schedules of the plaintiffs," and that, "[i]n the absence of specific information about the break and travel times of the plaintiffs in this case," he could not determine whether there was any violation of the FLSA or whether any travel time beyond that for which the Plaintiffs were compensated may be *de minimis* in individual cases. [ECF No. 65 at 27]. At trial, these same individual facts, such as travel time and break schedules, would need to be established, not only for the ten named Plaintiffs, but also for an entire class that could include well over 1,000 employees.[2] It will be hard enough to do this with the ten named Plaintiffs, and Plaintiffs do not appear to have given a lot of thought as to how the Court could accomplish this task for the entire proposed class. Accordingly, despite certain similarities among the proposed class members, there are unmanageable differences, affecting both liability and damages, which preclude class certification.

## IV.   Conclusion

For the reasons stated herein, the Plaintiffs' Motion for Class Certification [ECF No. 82] is <u>DENIED</u>.

---

[2] Although the rectigraphs produced in discovery, as the Plaintiffs claim [ECF No. 85 at 3], reveal the location of swing-on and swing-off points, they do not establish how long it takes any given individual on any given day to get from one point to another, which is a completely individualized inquiry, dependent on a variety of factors, as more fully discussed herein.

Rather than continue to squabble over how this case is going to be structured, it might behoove all parties to put some effort into devising a workable solution to the issue of how those owned money can be most efficiently compensated. Instead of moving for class certification three separate times, the Plaintiffs might instead have proposed smaller classes in which the class members would have more common claims. Also, the defendant likely owes some money to at least some employees. Because the passage of time will not change that fact, the defendant too might consider how to best bring this litigation to a fair and timely resolution. In an effort to move this along, with or without the cooperation of the parties, the Court has scheduled a status conference for September 27, 2016 at 11:00 in Courtroom 17. This status conference will function both to get this case back on track to resolution and as an opportunity for the parties to propose how to efficiently resolve the split-shift claims of MBTA employees not named in this action, whether through the appointment of a Special Master, the initiation of related lawsuits by subgroups of MBTA employees, or otherwise.

**So Ordered.**

Dated: September 20, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE