UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LOCAL 589, AMALGAMATED TRANSIT UNION, PATRICK F. HOGAN, ET AL., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 13-cv-11455-ADB |
| MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, | * * * * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT IN PART**

BURROUGHS, D.J.

The parties to this action filed a notice of partial settlement on December 28, 2016, which indicated that they had reached a settlement agreement as to the amounts to be paid to certain individual plaintiffs, and stipulated that the Court would fashion a reasonable attorneys' fees award after briefing. [ECF No. 108]. Plaintiffs subsequently filed a motion for summary judgment regarding attorneys' fees and other matters, which Defendant opposed. [ECF Nos. 111, 112]. For the reasons discussed below, the motion for summary judgment is granted in part.

**I.      STANDARD OF REVIEW**

Plaintiffs request an award of reasonable attorneys' fees and costs pursuant to the fee-shifting provisions of the Fair Labor Standards Act, 29 U.S.C. § 216, and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150. Defendant does not contest that Plaintiffs are entitled to an award of attorneys' fees under these statutes, but it disputes the amount that Plaintiffs have requested.

"When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551–52 (2010)). "In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate or rates." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) and Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001)). "The party seeking the award has the burden of producing materials that support the request." Id. (citing Hensley, 461 U.S. at 433). "These materials should include counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates." Id. (citing Gay Officers Action League, 247 F.3d at 295–96). While the lodestar "constitute[s] the usual starting point," the Court's "discretion is by no means shackled by" the prevailing party's time records. Gay Officers Action League, 247 F.3d at 296. "For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." Id. (citing Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1991)). Additionally, "[w]hen a plaintiff prevails on some, but not all, of multiple claims, a fee reduction may be in order." Id. at 298 (citing Hensley, 461 U.S. at 434–35, and Coutin, 124 F.3d at 339–40).

II. DISCUSSION

    A. **Hourly Rate**

Hourly rates "are to be calculated according to the prevailing market rates in the relevant community." Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (quoting Blum v. Stenson, 465 U.S. 996, 895 (1984). "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialled counsel." Hutchinson, 636 F.3d at 16. "[T]he rate that

2

a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." Id.

Plaintiffs propose that they be awarded $500 per hour for experienced lead counsel, $350 per hour for local litigation counsel, and $100–250 per hour for less experienced staff counsel. In support, Plaintiffs claim that they have mentioned these rates to Defendant on more than one occasion and Defendant has not explicitly objected to the rates. Plaintiffs also cite a chart providing rates for attorneys prepared by the United States Attorney's Office for the District of Columbia, which sets forth rates based on an attorney's years of experience. USAO Attorney's Fees Matrix 2015–2016, United States Attorney's Office for the District of Columbia, *available at* https://www.justice.gov/usao-dc/file/796471/download. It is not clear from the chart itself who would charge these rates, but the chart explicitly states that it "has not been adopted by the Department of Justice generally for use outside the District of Columbia." Id. at n.1. Plaintiffs have also stated that if Defendant opposed the proposed hourly rates, Plaintiffs would submit additional documentation, but Defendant has opposed these rates, and no additional information has been filed by Plaintiffs. A document showing rates for attorneys who practice in a different community,[1] and who potentially perform different legal services than those provided by Plaintiffs, falls short of sufficient proof for Plaintiffs' proposed hourly rates.

In addition, Defendant submitted a document which appears to be the written fee agreement between Plaintiffs and their counsel. [ECF No. 112-1]. The fee agreement provides that counsel will create a bill that reflects a $500 per hour rate, but counsel will only bill

---

[1] To the extent that counsel based in Virginia seeks to be reimbursed based on local rates that prevail in that community, courts in the First Circuit have generally disfavored that approach absent proof that the case required a "specialist" who was not available in the local community. See Guckenberger, 8 F. Supp. 2d at 103–04. Plaintiffs have not even attempted to argue that an out-of-town "specialist" was required here, and the Court has no reason to believe this was so.

Plaintiffs $200 per hour. Id. at 3. If Plaintiffs win fee reimbursement, counsel "will then receive all money allocated for the work at a rate beyond the $200 per hour, with the rest going to [Plaintiffs] to replace the money spent by [Plaintiffs]." Id. In the event that Plaintiffs do not win a fee award, the parties "will negotiate to reach a resolution of the outstanding fee balance." Id. Defendant attempts to portray this agreement as nefarious, but instead, it seems to reflect a modified contingency fee arrangement. The rate that the attorney actually charged the client is considered useful evidence of market value. See United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 40 (1st Cir. 2008) ("the rate that private counsel actually charges for her services, while not conclusive, is a reliable indicium of market value"); Hutchinson, 636 F.3d at 16 (same). The Court would have been warranted in awarding $200 per hour, given that was what counsel was being paid, and in the absence of any information about the usual and customary rate. But because the terms of the agreement indicate that counsel expected to earn more than $200 per hour, but less than $500 per hour, the Court will award $300 per hour[2] for the time expended by the more experienced litigators, Douglas Taylor and Paul Tyler, and $120 per hour for the less experienced litigator, Brian Connolly.[3]

**B.   Hours Spent on Unsuccessful Claims**

Plaintiffs recognize that Defendant should not be expected to pay attorneys' fees for time expended on unsuccessful claims. See Gay Officers Action League, 247 F.3d at 298. Plaintiffs propose that the Court award them 50% of the fees that accrued prior to Judge Woodlock's

---

[2] This rate is in line with the $320 per hour that counsel was awarded in a similar case. See Order, Rogers v. Amalgamated Transit Union Local 689, No. 14-cv-01650 (D.D.C. Feb. 10, 2017), ECF No. 49.

[3] In their motion, Plaintiffs request $150 per hour for Brian Connolly as "less experienced staff counsel" [ECF No. 111-1 at 2 n.1], but the Taylor affidavit reflects a rate of $120 for Mr. Connolly [ECF No. 111-2 at 2], and Defendant believes that Plaintiffs actually used a rate of $100 per hour in their calculations [ECF No. 112 at 3 n.6].

4

March 31, 2015 ruling denying their class certification motions, and 100% of the fees incurred after the March 31 ruling. After the March 31 ruling, however, Plaintiffs filed yet another class certification motion, and they also filed a motion to amend the complaint to add approximately 1,600 plaintiffs, which the Court found to be an attempt to "circumvent the challenges of class certification." [ECF No. 101 at 3]. These motions were also unsuccessful. Although Plaintiffs eventually obtained a settlement providing compensation for five individuals, these individuals constitute a small fraction of the class of people that Plaintiffs spent most of their time seeking to represent. The judgment obtained by Plaintiffs amounts to $12,273, an average of $2,454.60 per individual. Based on the documentation provided by Plaintiffs, it is somewhat difficult to separate time spent on the unsuccessful claims from time spent on the claims that succeeded. Defendants propose an overall reduction of 60% of the lodestar figure after it is calculated, which strikes the Court as more than reasonable. Accordingly, the Court will reduce the lodestar by 60% for time spent on the unsuccessful claims.

      **C.**      **Block Billing, Rounding Up, Excessive Hours, and Vague Descriptions**

Defendant has pointed out various other problems with the hours submitted by Plaintiffs. First, Defendant has noted several examples of block billing, including somewhat egregious examples where Plaintiffs block-billed over periods of days, weeks, and even months. For example, Plaintiffs listed a single entry for 37.5 hours spanning November 1, 2012 to December 25, 2012. The entry is very detailed, but should have been broken down into the component tasks and hours. The Court's own review demonstrates that numerous entries have been block billed.[4]

---

[4] Further examples include a single entry for 8 hours from June 11–27, 2013 for "Completed Federal Complaint, conveyed to local counsel, conferred with opposing counsel, negotiated over possible settlement;" an entry for 14.5 hours from August 21–23, 2013 for "Drafted Report;" an entry for 15 hours from September 10–October 7, 2013 for "Drafted Complaint;" an entry for 11.5 hours from November 4–7, 2013 for "Drafted Motion;" an entry for 3.5 hours from November 25–26, 2013 for "Analysis;" and so on. [ECF No. 111-2].

"Block billing is generally disfavored by courts and sanctioned by reducing the fee." Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 196–97 (D. Mass. 2013) (citing EEOC v. AutoZone, Inc., 934 F. Supp. 2d 342, 354–55 (D. Mass. 2013). "The First Circuit has found that a global reduction to sanction block billing is not inappropriate." Id. (citing Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008)).

Next, Defendant points out that every entry submitted by Plaintiffs has been rounded to a half or whole hour.[5] The use of six to ten minute increments would have been more reasonable and in line with industry standards. By rounding up to the nearest half hour, the hours submitted by Plaintiffs' counsel are likely to be inflated.

Defendant has also noted examples of potentially excessive hours, such as sending two attorneys to a deposition, 41 hours billed to "[c]ompile[] rectigraph data," and 15.5 hours to "[r]esearch[] various cases where Unions were class representatives and other FLSA matters."

In addition, Defendant has noted several examples of entries that are insufficiently detailed, such as "Drafted Report" (14.5 hours), "Drafted Motion" (5 hours), "Analysis" (3.5 hours), "Review of the file" (2 hours), and "Research and preparation" (1.5 hours).

Defendant proposes a reduction of 20% for block billing. A global reduction for block billing alone may not be appropriate in this case, because although a substantial number of entries are block billed, the majority are not. Considering the other issues identified, however, particularly the generous "rounding up," but also the excessive and vague entries, the Court concludes that it is appropriate to impose a global 20% reduction due to the combination of

---

[5] As Defendant notes, one entry out of the 148 total that Plaintiffs have provided is not rounded to a half or whole number. The Court agrees this was likely a typo.

problems Defendant has identified. Accordingly, the Court will reduce the lodestar by an additional 20%.

### D. Hours and Expenses Billed by Local Counsel

Plaintiffs retained two attorneys as local counsel, Brian Rogal and Paul Hynes. Plaintiffs submitted an exhibit to the Taylor affidavit that states that Rogal and Hynes collectively billed 67.1 hours at a rate of $350 per hour. They also claim that local counsel spent $1,084.51 on expenses. Plaintiffs have not submitted more detailed information on how these attorneys spent their time, nor have they provided a list of expenses. "The court must secure from the attorneys a *full and specific* accounting of their time; bills which simply list a certain number of hours and lack such important specifics as *dates* and the nature of the work performed during the hour or hours in question should be refused." Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986) (quoting King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977)). Therefore, because the documentation provided by Plaintiffs is not adequate, the Court will not award attorneys' fees or expense reimbursement to local counsel Rogal and Hynes.

### E. GT&T's Expenses

Finally, Defendant objects to the list of expenses submitted by Douglas Taylor on behalf of his law firm, GT&T, arguing that the expenses are insufficiently detailed. Defendant points out that Plaintiffs have not explained the reason for incurring certain expenses (for example, whether an airline ticket was for travel to argue an unsuccessful motion). The expense list also includes multiple ticket change fees, and it is not apparent whether these change fees were necessary to litigate the case or simply for the convenience of counsel. Given that the Court has reduced the attorneys' fees by 60% to reflect that a majority of counsel's time was expended in the pursuit of unsuccessful motions, the Court will likewise impose the same reduction on the

GT&T expenses, assuming that a majority of the expenses were incurred in litigating the unsuccessful claims. See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 400 (D. Mass. 2004) (reducing expenses by 50% due to lack of description).[6]

### F.   Calculation of Award

Plaintiffs did not submit a total number of hours for each attorney. Rather, they submitted a sum in dollars, as well as a list of charges per month. Therefore, the Court must calculate the total number of hours on its own, based on the time and task list submitted by Plaintiffs.[7] By the Court's calculation, Douglas Taylor worked 314.9 hours on the case, Brian Connolly worked 312 hours, and Paul Tyler worked 23.5 hours.[8] At a rate of $300 per hour for Douglas Taylor and Paul Tyler, and $120 per hour for Brian Connolly, this results in an initial lodestar figure of $138,960. Reduced by 60% for unsuccessful claims, and an additional 20% for block billing, rounding up, and the other issues discussed above, this results in a final award of $27,792. The GT&T expenses of $1,633.82[9] are also reduced by 60%, to $653.53.[10] Lastly, Plaintiffs submitted an additional 9 hours that Douglas Taylor worked during the settlement and attorneys'

---

[6] In sum, for the reasons discussed throughout this opinion, the documents submitted by Plaintiffs are inadequate, confusing, and lacking in important detail, requiring Defendant and the Court to expend additional time attempting to decipher the records, and ultimately reducing the fees collected by Plaintiffs due to errors that could have been easily avoided.

[7] The time and task list is provided as Attachment B to the Taylor affidavit. [ECF No. 111-2]. The Court used the hours listed on pages 7–18. The hours listed on pages 19–29 appear to be an exact duplication of those listed on pages 7–18 (with the exception of the last page, which is not included in the second group of pages).

[8] The list also reflects 6.5 hours billed by "MR," whose name and position are not identified in Plaintiffs' documentation (nor is the Court able to guess), so Plaintiffs will not receive any compensation for that person's work.

[9] The Court calculated this total by adding the individual expenses documented in the list provided by Plaintiffs. [ECF No. 111-2 at 31]. The Court does not understand what the two items titled "Invoice from JAMS (paid by Local)" mean, so these items are not included in the total.

[10] Plaintiffs have additionally requested that the Court enter an order reflecting "the finding of violation of law" and the payment of "monetary liability." The settlement agreement [ECF No. 108-1] explicitly disclaims any admission of liability, so the Court declines to include such language here.

fees stage of the case [ECF No. 111-2 at 35], which the Court approves at $300 per hour for a total of $2,700.

### III. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment [ECF No. 111] is <u>GRANTED</u> in part. Plaintiff is awarded a total of $31,145.53 in fees and costs.

**SO ORDERED.**

March 31, 2017                                                  /s/ Allison D. Burroughs
                                                                ALLISON D. BURROUGHS
                                                                U.S. DISTRICT JUDGE